UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RHONDA B.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-cv-02757-JMS-TAB |
| | ) |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) ) ) |
| | ) |
| Defendant. | ) |

## **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Rhonda B. protectively filed for disabled widow's benefits from the Social Security Administration ("SSA") on March 21, 2016, alleging an onset date of December 31, 1997. [Filing No. 7-2 at 13.] Her application was initially denied on July 20, 2016, [Filing No. 7-4 at 2], and upon reconsideration on August 29, 2016, [Filing No. 7-4 at 9]. Administrative Law Judge Blanca de la Torre (the "ALJ") held a hearing on August 1, 2018. [Filing No. 7-2 at 35-66.] During the hearing, Rhonda B. moved to amend her alleged onset date to March 18, 2016. [Filing No. 7-2 at 50-51; Filing No. 7-5 at 14.] The ALJ granted the motion. [Filing No. 7-2 at 51.] The ALJ issued a decision on September 6, 2018, concluding that Rhonda B. was not entitled to receive benefits. [Filing No. 7-2 at 10.] The Appeals Council denied review on May 1, 2019. [Filing No. 7-2 at 2.] On July 5, 2019, Rhonda B. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

To be entitled to benefits as the widow or widower of a person who died fully insured—based on a relationship that qualifies according to the regulation—the claimant must be at least 60 years of age or be at least 50 years of age and have a disability as defined in 20 C.F.R. § 404.1505. 20 C.F.R. § 404.335(a)-(c). Additionally, the claimant's disability must have started not later than seven years after the insured died. 20 C.F.R. § 404.335(c)(1).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An

3

award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Rhonda B. was 50 years of age on her amended alleged onset date. [Filing No. 7-2 at 20.] She has completed a high school education and previously worked as a machinist. [Filing No. 7-6 at 7.][2]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded Rhonda B. was not disabled. [Filing No. 7-2 at 21.] Specifically, the ALJ found as follows:

- The "prescribed period" during which Rhonda B. must prove disability began on the date the wage earner died, June 30, 2011, and ended on June 30, 2018. [Filing No. 7-2 at 14.]

- Rhonda B. met the non-disability requirements of the Social Security Act for disabled widow's benefits. [Filing No. 7-2 at 15-16.]

- At Step One, she had not engaged in substantial gainful activity[3] since March 18, 2016, the amended alleged onset date. [Filing No. 7-2 at 16.]

- At Step Two, Rhonda B. had "the following severe impairments: obesity, degenerative disc disease of the thoracic and lumbar spine, hypertension, varicose veins in the lower extremities, and gastroesophageal reflux disease." [Filing No. 7-2 at 16 (citation omitted.]

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 7-2 at 16.]

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- After Step Three but before Step Four, she had the RFC "to perform light work as defined in 20 CFR 404.1567(b). Specifically, she can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. She is able to sit for 1 hour at a time and for a total of 6 hours in an 8-hour workday, and can stand and/or walk for 1 hour at a time and for a total of 6 hours in an 8-hour workday. The changes in position can be performed without leaving the workstation. She occasionally can climb stairs and ramps, balance, stoop, crouch, and kneel. She cannot crawl or climb ladders, ropes, or scaffolds. She requires a cane to ambulate. She can tolerate occasional exposure to extreme cold, extreme heat, and industrial vibrations. She cannot be exposed to workplace hazards, such as unprotected heights or dangerous, moving machinery. She cannot tolerate strobe or flashing lights in the immediate work area. She can tolerate Noise Levels 1 through 3, as defined in the Dictionary of Occupational Titles ("DOT") and the Supplemental Characteristics of Occupations in the DOT." [Filing No. 7-2 at 17.]

- At Step Four, there was no past relevant work to consider. [Filing No. 7-2 at 20.]

- At Step Five, relying on the testimony of the vocational expert ("VE") and considering Rhonda B.'s age, education, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed through the end date of the prescribed period in representative occupations, such as a packager, bench assembler, and office helper. [Filing No. 7-2 at 20-21.]

### III.
### DISCUSSION

Rhonda B. makes two assertions of error regarding the ALJ's decision, that she: failed to properly weigh the opinion evidence and failed to properly assess Rhonda B.'s subjective testimony. The Court will consider each in turn to the extent necessary to resolve the appeal.

**A. Whether the ALJ Failed to Properly Weigh the Opinion Evidence**

Rhonda B. argues that the ALJ erred by finding that her treating physician's opinion was not supported by the medical record based on the ALJ's own evaluation of the objective evidence. [Filing No. 11 at 8.] Rhonda B. contends that the ALJ inappropriately equated reference to Rhonda B.'s pain being "stable" with non-disability. [Filing No. 11 at 8-9.] She takes issue with the ALJ's characterization that the treating opinion would mean that Rhonda B. was "bedridden." [Filing No. 11 at 9.] She asserts that her activities of daily living were not inconsistent with the

5

assessment. [Filing No. 11 at 10.] She argues that it was inappropriate for the ALJ to rely heavily on the assessments of the state agency reviewing consultants because the opinion of a non-examining source by itself is not substantial evidence. [Filing No. 11 at 10-11.] Rhonda B. asserts that the treating opinion should have been given controlling weight because the ALJ did not identify substantial evidence that conflicted with the assessment. [Filing No. 11 at 11-12.] Rhonda B. further contends that even if the ALJ did not err in failing to give the treating opinion controlling weight, she should have given the assessment more weight according to the regulatory factors used to weigh opinion evidence. [Filing No. 11 at 12.]

Rhonda B. argues that the above errors were compounded by the ALJ's failure to address a significant finding of the consultative examiner that Rhonda B. required a cane to stand. [Filing No. 11 at 12-13.] She asserts that the error was material because the VE's testimony established that the need to use a cane for standing would preclude light exertional work, and Rhonda B. would be considered disabled according to the Medical-Vocational Guidelines if light work were precluded. [Filing No. 11 at 12-13.]

The Commissioner argues that the ALJ reasonably weighed the opinion evidence. [Filing No. 17 at 5.] The Commissioner contends that the ALJ explained her conclusion that the treating opinion was deserving of limited weight, including that the assessment that Rhonda B. was bedridden was inconsistent with her testimony regarding her daily activities. [Filing No. 17 at 5-6.] The Commissioner argues that the ALJ did not err in "playing doctor" because she discussed the objective medical evidence, including the findings of the consultative examiner. [Filing No. 17 at 6.] The Commissioner also contends that the ALJ's RFC assessment was consistent with those findings. [Filing No. 17 at 7.] The Commissioner argues that the ALJ is permitted to discount a treating opinion based on evidence that the claimant's symptoms are controlled and that

6

Rhonda B. has not cited to the record to support her contention that references to her pain being stable meant that it was no better or worse. [Filing No. 17 at 7.] The Commissioner contends that it was reasonable for the ALJ to interpret the treating opinion to have assessed Rhonda B. to be bedridden. [Filing No. 17 at 7-8.] Finally, the Commissioner argues that Rhonda B. overlooks that the ALJ did not rely solely on the reviewing consultants' assessments and that it was reasonable for the ALJ to conclude that those assessments were more consistent with the record. [Filing No. 17 at 8.]

In her reply, Rhonda B. contends that the ALJ was playing doctor by relying on her own interpretation of objective evidence—without an expert review of the full updated record—to conclude that the record was inconsistent with an assessment of disability. [Filing No. 18 at 1-2.] Rhonda B. also argues that: (1) the Commissioner's contention is inaccurate that the ALJ's RFC assessment was consistent with the findings of the consultative examiner; (2) the Commissioner's counsel ignored the fact that the consultative examiner found that Rhonda B. required a cane to stand; and (3) the ALJ did not mention the finding in the written decision or explain why it was not included in her RFC assessment. [Filing No. 18 at 2.]

    *1. Treating Opinion*

Based on the filing date of Rhonda B.'s application, the treating physician rule applies. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) (noting that the treating physician rule applies to claims filed before March 27, 2017). In *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)), the Seventh Circuit held that a "treating doctor's opinion receives controlling weight if it is 'well-supported' and 'not inconsistent with the other substantial evidence' in the record." *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). "An ALJ must offer 'good reasons' for

discounting the opinion of a treating physician." *Scott*, 647 F.3d at 739 (citing *Martinez v. Astrue,* 630 F.3d 693, 698 (7th Cir. 2011); *Campbell*, 627 F.3d at 306). "And even if there had been sound reasons for refusing to give [a treating physician's] assessment controlling weight, the ALJ still would have been required to determine what value the assessment did merit." *Scott*, 647 F.3d at 740 (citing *Larson v. Astrue,* 615 F.3d 744, 751 (7th Cir. 2010)). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Scott*, 647 F.3d at 740 (citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)); *see* 20 C.F.R. § 404.1527(c). However, so long as the ALJ "minimally articulates" her reasoning for discounting a treating source opinion, the Court must uphold the determination. *See Elder v. Astrue,* 529 F.3d 408, 415-16 (7th Cir. 2008) (affirming denial of benefits where ALJ discussed only two of the relevant factors laid out in 20 C.F.R. § 404.1527).

The ALJ gave limited weight to the May 2017 medical source statement of Donald McMahon, M.D., despite observing that he had treated Rhonda B. "fairly consistently since 2014." [Filing No. 7-2 at 19.] The ALJ provided several reasons including that "[t]he opinion suggest[ed] that [Rhonda B. was] bedridden, but it [was] contradicted by [her] own testimony regarding her daily activities, including caring for her grandson." [Filing No. 7-2 at 20.] The Seventh Circuit has held that an ALJ may rely on the testimony of the claimant describing her capabilities to establish her RFC, her ability to work generally, and to discredit her inconsistent statements alleging greater limitations. *See Kapusta v. Sullivan*, 900 F.2d 94, 96 (7th Cir. 1989) ("Thus, without even referring to the medical reports, Kapusta's own testimony provides substantial evidence to support the ALJ's conclusion."). The Seventh Circuit explained that "[a]lthough the

8

treating physician's views are to be given some deference, *see* Garrison v. Heckler, 765 F.2d 710 (7th Cir. 1985), the final decision on whether a claimant is disabled or not is a legal one rather than a medical one, and it is for the ALJ to make that decision." *Kapusta*, 900 F.2d at 97 (citing 20 C.F.R. § 404.1527) (additional citation omitted). "The ALJ's reasonable resolution of conflicts in the evidence is not subject to review, as we do not reweigh the evidence." *Kapusta*, 900 F.2d at 97 (citing *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989)). The regulations instruct the ALJ to consider "consistency" with "the record as whole" when determining the weight that should be given a medical opinion. 20 C.F.R § 404.1527(c)(4). The regulations also instruct the ALJ to consider the claimant's activities of daily living when evaluating the claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3)(i). The Seventh Circuit had held that it is proper to extend that analysis to an evaluation of the opinion evidence. *See Reynolds v. Bowen*, 844 F.2d 451, 454 (7th Cir. 1988) (Despite evidence of pain, the ALJ was permitted to discount a treating source opinion that was "not completely consistent with [the claimant's] normal activities.").

On May 4, 2017, Dr. McMahon completed a questionnaire assessing Rhonda B.'s physical limitations, which indicated, in part, that she could stand/walk 15 minutes at one time and 60 minutes total in an eight-hour workday, she could sit for 60 minutes total in an eight-hour workday, her pain and other symptoms would "constantly" be severe enough to interfere with her attention and concentration, and she would be likely be absent from work more than four days per month because of her impairments and treatment. [Filing No. 7-7 at 53.] As such, the opinion indicated that Rhonda B. would have been capable of working only two hours in an eight-hour day between sitting, standing, and walking and would have presumably needed to be laying down or perhaps reclined during the remainder of the workday.

9

Earlier in the decision, the ALJ discussed Rhonda B.'s testimony concerning her daily activities. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole, and . . . it would be needless formality to have the ALJ repeat substantially similar factual analyses" throughout the decision). The ALJ's summary was as follows:

> The claimant is able to perform varied and good quality activities of daily living. She drives, goes grocery shopping, cooks, and does laundry with help from her sister, who carries the laundry basket for her. She testified that her sister also helps with vacuuming sometimes and mowing the grass. The claimant testified that she lives with her 15-year-old autistic grandson and that she has had nobody else but her grandson since her husband passed away. During the day, she is busy caring for her grandson, who she described as a "very sick child" - she has to give him medication around the clock or he would die (claimant testimony). She prepares his meals, helps him get dressed, and takes him to doctor's appointments (claimant testimony). She testified that he can walk without her assistance but had limited mobility when he was younger. She testified that her grandson does "hardly anything" for himself but is learning to be more independent. Home health aides come to her home for about 2 and half hours a day for 4 days a week to provide educational and other services for her grandson, but she sometimes has to assist them. She testified that he is stubborn and does not always listen or cooperate (claimant testimony). She acknowledged that caring for her grandson is similar to having a job, likening it to a full, 12-hour shift, but that she takes a "few minutes" to herself during the day - she has pain but pushes through it because she has to (claimant testimony). The claimant testified that she could maintain a regular and consistent schedule if she did not have to care for her grandson.

[Filing No. 7-2 at 19.]

Rhonda B.'s testimony concerning her daily activities appears inconsistent with Dr. McMahon's assessment. While it is not entirely clear how much of the day Rhonda B. would need to be on her feet versus sitting to provide such substantial assistance to her grandson, her testimony did not indicate that she would be able to spend the majority of the day in some other position. Her representative asked her if there was a position that she found more comfortable and she responded that she sat "in a recliner sometimes in the evening and that seems to be a little bit more comfortable." [Filing No. 7-2 at 46.] When asked to describe her typical day, she testified that

10

she wakes up at 6am to give her grandson his medication and "sometimes I'll lay back down and just relax until about eight o'clock and then get up. He'll get up and I'll get up and I'll have a cup of coffee." [Filing No. 7-2 at 46.] While she testified that they often stay home together, she clarified, "I'm very busy with him a lot because he is a very sick child and he's autistic too so I'm pretty busy with him a lot." [Filing No. 7-2 at 46-47.] There was no indication that she spends the majority of the day laying down or reclining. Rhonda B.'s representative specifically asked her to explain what a day caring for her grandson was like:

> Q But in a typical day do you think, I mean, how much hands-on care do you have to, I mean, is it a, two hours and a break; two hours and a break?
>
> A No.
>
> Q -- like a job in a full eight[-]hour day?
>
> A It's a full 12-hour shift, okay. It's from the time he wakes up until the time he goes to bed, regardless how I feel[,] and I've had to do it in a wheelchair and I've done it. Since my husband has passed away[,] I have nobody but us.
>
> Q Okay, but the manner in which you're doing this how would that differ from a job?
>
> A I guess it wouldn't because I have, you know
>
> Q I mean, do you take extended breaks? Do you
>
> A Yeah, I try to, yes, I have to because it hurts. I have [no] choice but I have to sit down and take a few minutes to myself and he understands. He's learning to understand that Nana can't be on the go constantly trying to do this, trying to do that for him and he doesn't do hardly anything for himself. He's learning and we're trying to teach him to do things so I don't have to be there and for him because I think he should be a little independent.
>
> Q But you're getting at least four days a week help?
>
> A Yes, with the teachers, yes, you know, for like two and a half hours they're there at my house about three and a half hours four days a week.
>
> Q Does that type of break help?

11

>A Yes, it does because sometimes I, I don't have to sit in with him [or] sometimes I'm able to take a break and just relax for a few minutes while he doesn't need me and that's what I need and I know that and I'm putting myself at risk not taking care of myself.

[Filing No. 7-2 at 48-50.] Rhonda B. also testified that she sometimes must assist her grandson with his schoolwork because he is stubborn, limited verbally, and does not always want to deal with his teachers without her. [Filing No. 7-2 at 47.] Her testimony was substantial evidence that she would not be limited to sitting, standing, and walking for only two hours in an eight-hour workday.

Rhonda B.'s need to administer her grandson's medications according to a set schedule and assist in supervising his schoolwork is also inconsistent with Dr. McMahon's assessment that her symptoms would constantly interfere with her attention and concentration. Her testimony also conflicted with Dr. McMahon's assessment that she would likely miss four days of work per month. Further her testimony contradicts her argument on appeal that Dr. McMahon's opinion remains valid, despite the inconsistencies, because it is an assessment of what Rhonda B. could do on a sustained basis. [*See* Filing No. 11 at 9 (Rhonda B. contends that she was as limited as Dr. McMahon assessed her to be in a competitive work setting because her daily activities allowed her to "rest during the day, for the next day, or even several days.").] As detailed above, Rhonda B.'s testimony conflicted with the notion that her grandson's care could be managed without her attention for more than brief periods during the day. Her representative also specifically asked her, "Do you feel, would you be able to maintain a regular and consistent schedule if you had to be somewhere and were expected to function and do like a job?" [Filing No. 7-2 at 47.] Rhonda B. responded, "If I didn't have my grandson, yes, but I have my grandson permanently and he depends on me and I have to be, he has to have medication around the clock. It don't [sic] matter how bad I feel or how horrible I'm feeling." [Filing No. 7-2 at 47.]

12

Accordingly, the ALJ provided a good reason, supported by substantial evidence, to discount Dr. McMahon's treating opinion and reversal is not warranted on this ground.

### 2. Consultative Examination

On May 13, 2016, Rhonda B. was examined by Mohammed Majid, M.D., at the request of the Disability Determination Bureau. [Filing No. 7-7 at 19-22.] Dr. Majid's examination findings included the observations that Rhonda B. had an "[a]ntalgic gait with left limp with cane. Station assisted with cane. She uses [the] cane at all times." [Filing No. 7-7 at 20.] Dr. Majid also observed that Rhonda B. "could get on and off the examination station [or table] without support." [Filing No. 7-7 at 20.] Dr. Majid did not provide a medical source statement assessing Rhonda B.'s physical capabilities based on the examination. The Seventh Circuit has explained that when a medical source's "findings are equivocal and therefore not particularly supportive of either side in [the] controversy," and the medical source has "failed to venture an opinion as to the extent of [the claimant's] limitations or as to [her] residual capabilities, the evidentiary usefulness of his findings is slight, at best." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

However, the VE's testimony established that the need to use a cane to stand—rather than being needed only for ambulation—was material in this case. The VE first testified that the representative occupations she provided at the light exertional level—available in the specified job numbers—could be performed by an individual that needed to use a cane to ambulate. [Filing No. 7-2 at 62.] On cross-examination, Rhonda B.'s representative asked the VE if those occupations or any other competitive work could be performed by an individual that needed to use a cane to assist with standing even two days out of a five-day workweek. [Filing No. 7-2 at 64.] The VE testified in response that:

> *Certainly not light work or above* and the reason for that is although they would have three days per week which would fit what I testified earlier about[,] being able

13

> to work those two days per week where the cane was necessary for standing would reduce the worker in the hypothetical to a one-handed worker[,] and based on my experience[,] that type of one-ha[n]ded worker would not be able to keep up with production expectations by an employer. They would eventually get fired from their job[,] so that would preclude all work under that hypothetical.

[Filing No. 7-2 at 64-65 (emphasis added).] According to the Medical-Vocational Guidelines, if light exertional work were precluded, based on Rhonda B.'s age[4] and the remaining relevant vocational factors, she would be considered disabled. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 2, 201.12 (rule for an individual who is closely approaching advanced age with a high school education that does not provide direct entry into skilled work, has no past relevant work experience, and is limited to sedentary exertional work); *see also* 20 C.F.R. § 404.1567 (the SSA classifies jobs as either sedentary, light, medium, heavy, or very heavy). The consultative examiner's observations that Rhonda B.'s station was assisted with a cane and that she used it at all times were supportive of her claim.

      The ALJ did not address those particular observations of the consultative examiner, despite summarizing the examiner's other findings including that Rhonda B.'s gait was antalgic with a cane and she was able to get on and off the examination table without support. [Filing No. 7-2 at 18.] The Seventh Circuit has explained that the "ALJ is not required to adopt the recommendations of an examining physician. But when a physician provides significant evidence that cuts against the conclusion reached by the ALJ, the ALJ must provide enough analysis to allow a re-viewing court some idea of why she rejected it." *Spicher v. Berryhill*, 898 F.3d 754, 757-58 (7th Cir. 2018) (citing *Clifford*, 227 F.3d at 873-74; *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996)). In *Spicher*, the Seventh Circuit applied the same requirement that the ALJ explain how

---

[4] The ALJ found that Rhonda B. was in the age category for individuals "closely approaching advanced age" on the date of her amended alleged onset date. [Filing No. 7-2 at 20 (citing 20 C.F.R. § 404.1563).]

"observations" of the consultative examiner were discredited, because the court concluded that those findings were not consistent with the postural limitations in the ALJ's RFC finding. 898 F.3d at 758-59 (citing *Clifford*, 227 F.3d at 873-74).

Despite finding that Rhonda B. needed to use a cane for ambulation, the ALJ did not explain that conclusion. She also did not address generally whether the use of a cane was medically required. The SSA's own guidance provides that an "adjudicator must always consider the particular facts of a case" regarding the use of hand-held assistive devices. Social Security Ruling 96-9p (S.S.A. July 2, 1996), 1996 WL 374185, at *7. The ruling explains:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

*Id.*; *see* 20 C.F.R. § 402.35(b)(1) ("Social Security Rulings are binding on all components of the Social Security Administration."). The ALJ's failures to address whether a cane was medically required in this case, as well as grapple with the supportive observations of the consultative examiner that one was used for assistance with standing, were errors.

Rhonda B. testified that she had used a cane off and on since her first back surgery, but that she had been using it "permanently" during the last two years, including within her home. [Filing No. 7-2 at 43.] As detailed above along with her treating opinion argument, she testified that it was necessary that she provide considerable care-assistance to her grandson. However, her testimony about her daily activities did not necessarily and obviously contradict her allegation that she needed to use a cane for standing during the performance of those activities.[5] As explained

---

[5] The Seventh Circuit has cautioned against equating a claimant's household work with work in the labor market, particularly necessary care of a dependent loved one that "may impel her to heroic efforts." *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("A person can be totally

15

above, even the need to use a cane for standing for two days out of a five-day workweek would preclude work at the light exertional level in the competitive workforce. As such, the Court cannot conclude that the ALJ's error was harmless.

Accordingly, remand is necessary for further consideration of Rhonda B.'s need to use a cane to assist with standing.

### B. Whether the ALJ Failed to Properly Assess the Claimant's Testimony

Having found that remand is necessary for the reasons explained above, the Court declines to address Rhonda B.'s remaining assertion of error. As noted in the standard of review section, considerable deference is accorded the ALJ's credibility assessment because she is in the best position to evaluate the witnesses' testimony. However, on remand the ALJ should address the evidence that is supportive of Rhonda B.'s claim and explain how that evidence was evaluated. If the ALJ relies on Rhonda B.'s testimony or an assessment of her credibility to evaluate the supportive evidence, the ALJ should explain how any relevant conflicts were resolved.

---

disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, [she] is in fact working."). The Seventh Circuit has also held that an ALJ must consider the nature of the activities that a claimant performs to take care of a family member. *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014) (For example, the court explained that the claimant performed predominantly sedentary activities caring for an elderly mother, which differed "dramatically" for the type of work the ALJ believed she could perform on her feet for six hours a day, every day.)

## IV.
## CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying Rhonda B. benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C.§ 405(g) (sentence 4) as detailed above. Final Judgment will issue accordingly.

Date: 4/22/2020

*[signature]*

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel